## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

J.C. RENFROE & SONS, INC.,

        Plaintiff,

vs.                                                            Case No. 3:08-cv-31-J-32MCR

RENFROE JAPAN CO., LTD., JAPAN
CLAMP COMPANY, LTD., SORI
INDUSTRIES, INC., AND HIROYUKI
SORI,

        Defendants.

_____

## ORDER[1]

      This case is before the Court on defendants' motions to dismiss (Docs. 19, 20),[2] to which plaintiff has filed a response in opposition.  (Doc. 28.)  A reprise of an earlier case which culminated in dismissal without prejudice based upon *forum non conveniens*, J.C. Renfroe & Sons, Inc. v. Renfroe Japan Co., Ltd., 515 F. Supp. 2d 1258 (M.D. Fla. 2007)("Renfroe I"), this case ("Renfroe II") now raises issues of issue preclusion, *forum non conveniens*, personal jurisdiction and failure to state a claim

_____

[1]    Under the E-Government Act of 2002, this is a written opinion and therefore is available electronically.  However, it is intended to decide the motions addressed herein and is not intended for official publication or to serve as precedent.

[2]    Defendant Renfroe Japan Co. Ltd's Motion To Dismiss (Doc. 19); Defendants Japan Clamp Company, Ltd., Sori Industries, Inc., And Hiroyuki Sori's Motion To Dismiss.  (Doc. 20.)

against guarantors of a contract.   The Court has considered the motions and response, as well as evidentiary support filed by plaintiff and defendants.  (Docs. 20-2, 20-3, 21, 28-2, 28-3, 28-4.)  The Court heard argument of counsel at a hearing held on December 18, 2008  (Doc. 30), the record of which is incorporated herein.

## I.      Background

### A.      The 2008 Breach Of Contract Case ("Renfroe II")[3]

Plaintiff J.C. Renfroe & Sons, Inc.  ("J.C. Renfroe"), a Florida corporation, with its principal place of business in Jacksonville, manufactures and sells steel lifting devices, clamps and other related devices.   In December 1986, J.C. Renfroe designated defendant Renfroe Japan Co., Ltd. ("Renfroe Japan") "as its exclusive licensee to manufacture, or secure the manufacture of, and sell Renfroe-brand Products in Japan."  (Doc. 1 at 1-2 (Compl. ¶¶1, 6, 7).)

"On or about December, 1992 J.C. Renfroe and Renfroe Japan entered into a license agreement for the manufacture and sale of Renfroe-brand products in Japan," providing for royalty payments to J.C. Renfroe.  During all times material, defendant Sori Industries Inc. ("Sori Industries") manufactured Renfroe-brand products for sale in Japan.   Defendants Renfroe Japan and Sori Industries are both Japanese

---

[3]    A detailed recitation of the facts of the business relationship between plaintiff and defendants is set forth in the earlier referenced case between these parties.  See Renfroe I, 515 F. Supp. 2d at 1261-1264.  The Court will summarize pertinent facts, based upon the allegations of the complaint here.

corporations, having their principal places of business in Tokyo and Nagasaki, Japan, respectively.  (Compl. ¶¶ 2, 4, 8, 9.)

In March 2000, the board of directors of Renfroe Japan voted to sell Renfroe-brand products through defendant Japan Clamp Company, Ltd. ("Japan Clamp"), a Japanese corporation with its principal place of business in Tokyo.  Sales of Renfroe-brand products were switched from Renfroe Japan to Japan Clamp in April 2000. Renfroe Japan's operations were then relocated to the same business premises from which Japan Clamp operated.  (Compl. ¶¶ 3, 13, 14.)

The fourth defendant, an individual named Hiroyuki Sori ("Sori") was president of Renfroe Japan, and president and controlling shareholder of Sori industries and Japan Clamp.  Sori is a resident of Nagasaki.  (Compl. ¶ 5.)  Plaintiff alleges that at all times material, Japan Clamp and Sori Industries were "a subsidiary and/or affiliate of Renfroe Japan."  (Id. ¶¶ 3, 4.)  Plaintiff also alleges that "[t]he manufacturing of Renfroe-brand Products in Japan required close coordination with the U.S. operations of J.C. Renfroe.  On numerous occasions, Sori and representatives of Renfroe Japan traveled from Japan to J.C. Renfroe's Jacksonville headquarters for matters relating to the relationship between J.C. Renfroe, Renfroe Japan, Japan Clamp, and Sori Industries."  (Id. ¶ 10.)

After having extended the 1992 license agreement for ten years, "J.C. Renfroe

& Sons and Renfroe Japan entered into a license agreement" on November 1, 2002. "Under the License Agreement, J.C. Renfroe permitted Renfroe Japan to manufacture, sell, distribute and otherwise commercialize Renfroe-brand Products during the period of October 31, 2002 through October 31, 2005." (Compl. ¶¶ 17, 21.)

The License Agreement provides that it is between J.C. Renfroe and Renfroe Japan "and its affiliates, subsidiaries, successors and assigns (collectively, the 'LICENSEE')." (Doc. 1 at 16 (License Agreement introduction).) The License Agreement contains a sublicensing provision permitting the "LICENSEE" to sublease the right to manufacture, distribute, and sell Renfroe-brand products under the same terms and conditions as the License Agreement. (License Agreement ¶ 4.4.) "Any violation of this provision shall constitute a material breach of this Agreement and LICENSOR [J.C. Renfroe] shall be entitled to all remedies herein provided . . . [and] any material breach of a sublicense agreement by a sublicensee shall constitute a material breach by LICENSEE of this Agreement and LICENSOR shall be entitled to all remedies provided hereinabove or as otherwise provided at law or in equity." (Id.) The "parties" listed as having executed the License Agreement are "LICENSOR" J.C. Renfroe & Sons, Inc., bearing the signature of company president Anne Luten Renfroe, and "LICENSEE" Renfroe Japan Co., Ltd., signed by Yuji Itoh, company chairman. (Doc. 1 at 23.)

Relevant to the issues here, the License Agreement contains the following provision:

> 6.6   <u>Governing Law</u>. This Agreement shall be interpreted and enforced according to the substantive laws of the United States and/or the State of Florida as may be applicable, without regard to its conflict or choice of law rules.  By execution of this Agreement, LICENSEE submits itself to the jurisdiction of the courts of the United States.

(License Agreement ¶ 6.6.)

The License Agreement also provides that Sori, Japan Clamp, and Sori Industries jointly and severally "guarantee performance of all obligations of LICENSEE hereunder, including, but not limited to payments of all amounts due to LICENSOR . . . ."  (License Agreement ¶ 6.9.)  By signing the Guarantee, the three defendants listed "agree[d] to submit themselves to the jurisdiction of the courts of the United States of America."  (Doc. 1 at 13 (License Agreement).)

Plaintiff J.C. Renfroe filed a six count breach of contract case alleging "Defendants" breached the License Agreement by (1) subleasing to an unauthorized party without the prior written consent of J.C. Renfroe; (2) failing to timely pay appropriate license fees based upon sales; (3) failure to maintain complete books and records and to pay costs associated with license fee deficiencies; (4) failure to surrender licensed marked materials upon expiration of the License Agreement in October 2005; (5) sale of unmarked clamps "during the period covered by the License

Agreement;" and (6) unauthorized disposition of licensed products from Renfroe Japan to Japan Clamp and Sori Industries without prior approval of J.C. Renfroe.

### B. The 2006 Breach Of Contract, Tort and Trademark Infringement Case ("Renfroe I")

These same parties appeared before this Court two years ago concerning the same dispute. However, in Renfroe I, plaintiff J.C. Renfroe cast a much larger net, bringing a 16-count complaint against these same defendants plus Yuji Itoh ("Itoh"), who is chairman of Renfroe Japan. Counts I through V were labeled breach of contract, making the same claims against "Defendants" recited here based upon the License Agreement. Count VI alleged breach of the guarantee by Japan Clamp, Sori Industries, and Sori. Counts VI through XV were tort claims, with Itoh and Sori named as defendants in the conversion, fraud, interference with contractual and business relationships, conspiracy, and breach of fiduciary duty and candor counts; Japan Clamp, Sori Industries and Sori were named as defendants in the conversion count; and all defendants were named in the unfair competition and statutory trademark infringement counts. See 515 F. Supp. 2d at 1264 & n.3.

The two complaints differ as follows: (1) the 2008 Renfroe II complaint does not allege breach of guarantee against Sori, Sori Industries and Japan Clamp; (2) the 2008 Renfroe II complaint adds a breach of contract claim for alleged unauthorized disposition of licensed products, contending that Renfroe Japan transferred inventory of Renfroe-brand products to Sori Industries and Japan Clamp without prior

6

authorization by J.C. Renfroe as required by the License Agreement (Count VI) (basically restating a claim for conversion found in Count VII of the 2006 Renfroe II complaint); (3) the 2008 Renfroe II complaint transforms an earlier allegation of sale of unlicensed products after October 2005 to a breach of contract claim for failure to surrender licensed marked materials in October 2005 (Count IV); and (4) the 2008 Renfroe II complaint deletes all tort and statutory claims.

In contrast to the single dimensional breach of contract claims appearing in Renfroe II, the earlier 2006 Renfroe I tort claims weave allegations of a fraudulent scheme by Sori and Itoh starting in 2000 and continuing to the present to manipulate the Japanese companies to spirit away the manufacturing, distribution and sale in Japan of Renfroe-brand products to their own corporations (Japan Clamp and Sori Industries) and to squeeze J.C. Renfroe out of its royalties for the successful marketing of Renfroe products there. Considering the defendants' motions to dismiss for *forum non conveniens* in Renfroe I, the Court exhaustively analyzed each of the factors required for such a dismissal, and concluded that dismissal in favor of the Japanese forum was appropriate. Renfroe I, 515 F. Supp. 2d at 1265-1277.

Plaintiffs in Renfroe I, J.C. Renfroe and Anne Renfroe, dismissed their appeal of the Court's dismissal order in December 2007 and filed this successor action on January 10, 2008.

## II.    Discussion[4]

### A.    Issue Preclusion

Defendants argue that J.C. Renfroe's complaint should be dismissed based on the principle of issue preclusion, "as this Court has already determined that Jacksonville is not the appropriate forum to resolve this dispute." (Doc. 19 at 4.)[5]

"'Collateral estoppel, i.e., issue preclusion, refers to the effect of a judgment[6] in foreclosing litigation of an issue that has already been litigated and decided.'" Wingard v. Emerald Venture Florida LLC, 438 F.3d 1288, 1293 (11th Cir. 2006)(citation omitted).   "[I]ssue preclusion relates to the question of whether a federal court may decline to hear a matter of dispute within its jurisdiction." Bates v.

---

[4]    Pursuant to the teachings of Sinochem Int'l Co., Ltd. v. Malaysia Int'l Shipping Corp., 549 U.S. 422 (2007), the Court addresses defendants' issue preclusion and *forum non conveniens* arguments first.

[5]    "[F]ederal preclusion principles apply to prior federal decisions, whether previously decided in diversity or federal question jurisdiction." CSX Transp., Inc. v. Brotherhood of Maint. of Way Employees, 327 F.3d 1309, 1316 (11th Cir. 2003).

[6]    The Court dismissed Renfroe I without prejudice on *forum non conveniens* grounds, subject to conditions that defendants submit to the jurisdiction of Japanese courts and that J.C. Renfroe be permitted to reinstate its action in  Japan.  515 F. Supp. 2d at 1277.  "A *forum non conveniens* dismissal is a refusal to exercise jurisdiction, and should not be followed by an adjudication of defenses asserted." Chazen v. Deloitte & Touche, LLP, No. 03-11472, 2003 WL 24892029, at *3 (11th Cir, Dec. 12, 2002)(unpublished opinion). "Disposition of a case on *forum non conveniens* grounds *per se* is a final order subject to appeal." Sigalas v. Lido Maritime, Inc., 776 F.2d 1512, 1516 (11th Cir. 1985).  It follows then that a *forum non conveniens* dismissal is comparable to a "judgment" for purposes of considering the preclusive effect of a prior *forum no conveniens* dismissal.

*Harvey*, 518 F.3d 1233, 1240 (11th Cir.), cret. denied, 129 S.Ct. 419 (2008).

> [I]ssue preclusion bars identical parties to a proceeding from relitigating issues that were adjudicated in the former proceeding.  A court may give preclusive effect to a matter in dispute only when (1) that issue is identical to an issue decided in an earlier proceeding; (2) the issue was actually litigated on the merits; (3) the issue was decided in the earlier proceeding, meaning "the prior determination of the issue must have been a critical and necessary part of the judgment in that earlier decision"; and (4) the burden of proof in the earlier proceeding is at least as stringent as the burden of proof in the current proceeding.   [Citation omitted.]    Moreover, the party against whom issue preclusion is being sought must have had a "full and fair opportunity" to litigate the issue in the prior proceeding.

*Bates*, 518 F.3d at 1240-41.

When a court enters a final *forum non conveniens* dismissal, it may reconsider the issue if there is a change in the material facts underlying the judgment.  *Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 679 n.24 (5th Cir. 2003).  However, "a plaintiff may not relitigate a *forum non conveniens* issue unless he can show some 'objective facts that materially alter the considerations underlying the previous resolution.'"  *Villar v. Crowley Maritime Corp.*, 990 F.2d 1489, 1498 (5th Cir. 1993), abrogated on other grounds, *Marathon Oil Co. v. Ruhrgas*, 145 F.3d 211 (5th Cir. 1998).   The plaintiff "must do more than ask for a rebalancing of *forum non conveniens* considerations."  *Exxon Corp. v. Chick Kam Choo*, 817 F.2d 307, 314 (5th Cir. 1987), rev'd on other grounds, 486 U.S. 140 (1988).

A side-by-side examination of the respective complaints in <u>Renfroe I</u> and <u>Renfroe II</u> establishes that the objective facts relevant to the *forum non conveniens* determination are not identical, significantly altering the private and public interest analyses.  Most obvious, <u>Renfroe II</u> does not include tort claims of conversion, fraud, interference with contractual and business relationships, conspiracy, breach of fiduciary duty and candor, and unfair competition, as well as statutory claims of trademark infringement.   While the parties (with the exception of the omission of one individual plaintiff and defendant) and the gravamen of the business relationship giving rise to the claims are the same, the breadth of the allegations is significantly shrunk.  Only conduct during the life of the License Agreement, from November 2002 through October 2005 is relevant.  Evidence relating to whether J.C. Renfroe gave prior approval to certain conduct; whether J.C. Renfroe received all license fees, royalty payments and costs due under the Agreement; and whether "Defendants" returned all products to J.C. Renfroe in October 2005 at the conclusion of the agreement is implicated.   Evidence relating to pre-contract and post-contract conduct, motives, "schemes" and alleged fraud, misrepresentations and reliance is no longer relevant.  Thus, not all of the evidence admissible in a trial of the <u>Renfroe I</u> complaint would be admissible in a trial of the contract claims set forth in <u>Renfroe II</u>; the similarity of "historical facts" does not create issue preclusion here as defendants suggest.  (<u>See</u> Doc. 19 at 9.)

Moreover, unlike in <u>Renfroe II</u>, the Court in <u>Renfroe I</u> was faced with a plethora of tort claims which appeared to be governed by Japanese law; "[e]ven the possibility that foreign law applies in a dispute is sufficient to warrant dismissal on *forum non conveniens* grounds." <u>Warter v. Boston Securities, S.A.</u>, 380 F. Supp. 2d 1299, 1315 (S.D. Fla. 2004); <u>see also</u> <u>Gulf Oil Corp. v. Gilbert</u>, 330 U.S. 501, 509 (1947).[7]  The License Agreement's forum selection and choice of law clauses take on greater weight when not balanced against the interests of Japan in litigating tort claims arising out of conduct which took place in Japan, a fact acknowledged and considered by the Court in <u>Renfroe I</u>. 515 F. Supp.2d at 1276 ("resolution of plaintiffs' claims may require the application of Japanese law") .

Thus, because the issues currently before the Court are different from those previously implicated, defendants' invocation of the collateral estoppel doctrine must fail.  Plaintiff's trimming its claims to only those arising out of the License Agreement warrants revisiting the *forum non conveniens* issue.  <u>See</u> <u>In re Ski Train Fire</u>, 499 F. Supp. 2d 437, 444 (S.D.N.Y. 2007)(court not collaterally estopped by prior *forum non conveniens* decision concerning American plaintiffs in deciding whether foreign plaintiffs' claims arising out of the same mass disaster should be dismissed; that plaintiffs in the earlier action were American "was a decisive factor in the Court's

---

[7]    <u>Gulf Oil Corp. v. Gilbert</u>, 330 U.S. 501 (1947)(superceded by statute on other grounds as explained in <u>American Dredging Co. v. Miller</u>, 510 U.S. 443, 449 n.2 (1994).

forum non conveniens analysis"); Alexander Proudfoot, Plc v. Federal Ins. Co., 860 F. Supp. 541, 544 (N.D. Ill. 1994)(evidence regarding the sufficiency of discovery procedures in the United States warranted revisiting the *forum non conveniens* issue).

The material differences in the underlying claims alleged in Renfroe II render the *forum non conveniens* inquiry sufficiently distinct, particularly as to the public and private interest factors, such that renewed consideration of the convenience of this forum is not foreclosed.  Defendants' motion to dismiss based upon issue preclusion is due to be denied.

### B.    *Forum Non Conveniens* Analysis

In determining whether to decline jurisdiction based upon *forum non conveniens*, the Court, as before, considers whether (1) an adequate alternative forum is available, (2) the public and private factors weigh in favor of dismissal, and (3) the plaintiff can reinstate its suit in the alternative forum without undue inconvenience and prejudice.  See J.C. Renfroe & Sons, Inc., 515 F. Suppp.2d at 1265.  The Court is mindful that defendants have the burden of persuasion as to all elements of the *forum non conveniens* analysis, Leon, 251 F.3d at 1331, and that it must weigh in the balance a "strong presumption" against disturbing the plaintiff's initial choice of forum which "may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum." Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255 (1981).

12

### 1.    Availability of an Adequate Alternative Forum

In <u>Renfroe I</u>, the Court determined that Japan provides an available and adequate alternative forum for this case.  515 F.Supp. 2d at 1266-1270.  The Court here adopts that same reasoning and holds that Japan provides an available and adequate alternative forum for this dispute.  Plaintiff concedes this point.  (Doc. 28 at 17.)

### 2.    Private Interest of the Litigants

The underlying facts relevant to the private interests of the litigants has indeed materially changed.  Factors to be considered in this analysis include "'ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses . . . and all other practical problems that make trial of a case easy, expeditious, and inexpensive.'"  <u>Leon</u>, 251 F.3d at 1314 (quoting <u>Gulf Oil Corp. v. Gilbert</u>, 330 U.S. 501 at 508).  There is also a "strong presumption against disturbing plaintiffs' initial forum choice."  <u>SME Racks, Inc.</u>, 382 F.3d at 1100.  "This presumption in favor of the plaintiffs' initial forum choice in balancing the private interests is at its strongest when the plaintiffs are citizens, residents, or corporations of this country."  <u>Id.</u> at 1101.  To overcome this presumption, the Court must "'require positive evidence of unusually extreme circumstances, and should be thoroughly convinced that material injustice is manifest

13

before exercising any such discretion as may exist to deny a United States citizen access to the courts of this country.'" Id. (citation omitted).

In Renfroe I, the Court weighed the private interest factors starting with the litigants' access to evidence required to prove and disprove all of the causes of action alleged, and determined most of the witnesses who would be called to testify resided in Japan, implicating the cumbersome letters rogatory procedure. 515 F. Supp. 2d at 1271-1272.[8] Here, plaintiff asserts that to prove its contract claims, it would need to call three of its corporate officers, all of whom are located in Jacksonville, and would require "the deposition of Sori, and perhaps the depositions of the corporate representatives of the Defendant corporations." (Doc. 28 at 18.) Defendants Japan Clamp, Sori Industries and Sori submit the same 2007 declaration in this case as they did in Renfroe I contending it "applies equally to the allegations of the current Complaint," (Doc. 20-3 at 3), and listing the same 22 witnesses.[9] These defense witnesses include Sori and Itoh, company directors, area sales representatives, branch and officer managers, accountants, an inventor, a consultant, a lawyer, chief of shipment, design engineer, a patent officer and a judicial scrivener. (Doc. 20-3 at

---

[8] For instance, in Renfroe I, the Court noted that plaintiff had listed three witnesses from Jacksonville, Florida, as compared to twenty-two witnesses listed by defendants all of whom resided in Japan. 515 F. Supp. 2d at 1270.

[9] Licensee Renfroe Japan provides no specific evidence concerning witnesses and documentary evidence needed in this case, citing only to the Court's previous Order in Renfroe I as support for its argument. (Doc. 19 at 13-14.)

14

22-24.)  Plaintiff responds that "J.C. Renfroe too could load up its United States based witnesses to include accountants, attorneys and other witnesses and professionals." (Doc. 28 at 20.)

It is unlikely that defendants would require the same 22 witnesses to defend against six claims all arising out of a contract in effect from 2002 through 2005 as it would to defend against these same claims *plus* nine tort claims including fraud, conversion and civil conspiracy, plus a trademark infringement claim.  Indeed, while counsel for defendant contended evidence and witnesses located in Japan would be necessary to "prove the negative" in defense against plaintiff's claims, counsel did concede at oral argument that defendants would not require "exactly the same amount" of evidence to defend against plaintiff's claims in Renfroe II.

This License Agreement was implemented by the signors to the contract. Whether or not the terms of the agreement were fulfilled or were breached, are questions of fact which, for the most part, should be established by the testimony of the respective corporate representatives.  In making this observation, the Court does not foreclose additional relevant testimony as needed.  But it does find that most of the issues  between the United States corporate plaintiff and the Japanese corporate defendant licensee and guarantors will likely be addressed by their respective corporate representatives and officers, and that the parties stand in an essentially equal position with regards to the location of their respective witnesses.

15

The same is true of documentary proof.  In <u>Renfroe I</u>, plaintiff J.C. Renfroe conceded that documents relevant to six tort claims were located in Japan (and necessarily would have all been in Japanese).  515 F. Supp. 2d at 1272.  Those tort claims -  which involved the formation of Japanese corporations Japan Clamp and Sori Industries;  an alleged "scheme" by individual defendants utilizing its Japanese corporations starting in year 2000 and continuing to the present to gain control of plaintiff's products and squeeze plaintiff out of profits; and alleged conversion and defacing of Renfroe brand products - are now gone.

J.C. Renfroe contends that all of the documents in its possession pertaining to the implementation of the License Agreement are in Jacksonville and are in English. Defendant Renfroe Japan would presumably have in its possession these very same documents.  Defendants Japan Clamp, Sori Industries, and Sori again cite to the same 2007 affidavit which lists twenty-one documents and categories of documents, including the Sori Industries company registry; invoices and delivery records; a business card;  Japan Clamp company registry, patent application, trademark registration, account records, land registry, brochures, employee recruitment, and meetings records; a Renfroe Japan distributor agreement, company registry and patent application; and court documents.  (Doc. 20 at 20-22.)  While not prejudging the admissibility of this evidence, the documents listed by Japan Clamp, Sori Industries, and Sori appear to be beyond the scope of those necessary to prove or

disprove whether Renfroe Japan is liable for breach of its License Agreement with J.C. Renfroe, and whether the remaining defendants Japan Clamp, Sori Industries and Sori are liable on the guarantee agreement. The Court determines that location and translation requirements of corporate documents related to the performance of the License Agreement favors neither side's *forum non conveniens* argument.

The private interest factors are in equipoise or near equipoise, and are insufficient in this contract case to overcome the strong presumption in favor of this United States plaintiff's choice of forum here. Defendant has failed to adduce positive evidence of unusually extreme circumstances as to why these contract claims should not be tried here. SME Racks, Inc., 382 F.3d at 1101.

### 3.    **Public Interest Factors**[10]

As with the private interest analysis, the underlying facts relating to the public interests implicated by this lawsuit are materially different from those of Renfroe I. In this regard, the Court considers "'the sovereigns' interests in deciding the dispute, the administrative burdens posed by trial, and the need to apply foreign law.'" Membreno v. Costa Crociere S.p.A., 425 F.3d 932, 937 (11th Cir. 2005)(citation omitted).

---

[10]    If the balance of private interest factors is "'in equipoise or near equipoise, [the Court] must then determine whether or not factors of *public* interest tip the balance in favor of a trial in a foreign forum.'" SME Racks, Inc., 382 F.3d at 1109 (citation omitted)(emphasis in original). Additionally, "courts should consider both public and private factors 'in all cases.'" Id. at 1100 n.5 (quoting Leon, 251 F.3d at 1311)).

Chief among the changes presented by plaintiff's complaint in <u>Renfroe II</u> is the application of the choice of law clause to *all* claims asserted here, making it influential in a *forum non conveniens* analysis.    <u>See</u> <u>Liquidation Comm'n of Banco Intercontinental, S.A. v. Renta</u>, 530 F.3d 1339, 1357 (11th Cir. 2008)("[a]lthough the effects of the fraud were felt mostly in the Dominican Republic, American law properly governs [plaintiff's] claims, militating in favor of an American forum"); <u>cf.</u> <u>Szunlicz v. Norwegian Am. Line, Inc.</u>, 698 F.2d 1192, 1195 (11th Cir. 1983)(if United States law applies, then the case should not be dismissed for *forum non conveniens*).    "'A federal district court is bound to apply the conflict of law rules prevailing in the forum state.'"    <u>Samadi v. MBNA America Bank, N.A.</u>, 178 Fed. Appx. 863, 865 (11th Cir. 2006)(quoting <u>Judge v. Am. Motors Corp.</u>, 908 F.2d 1565, 1577 (11th Cir. 1990)). "Generally, Florida enforces choice-of-law provisions unless the law of the chosen forum contravenes strong public policy."    <u>Mazzoni Farms, Inc. v. E.I. DuPont De Nemours and Co.</u>, 761 So.2d 306, 311 (Fla. 2000).  In this case, where the contract explicitly designates Florida law as the applicable law, and no public policy contrary to enforcing the parties' choice of law has been identified, Florida law should be applied to these breach of contract claims.  <u>See</u> <u>Samadi</u>, 178 Fed. Appx. at 865.

Additionally, the forum selection clause, while permissive, is a factor weighing against dismissal because through it, defendants acknowledged that they may be sued in the United States and Florida concerning claims arising out of the License

18

Agreement, and by extension, the guarantee. Cf. Ibar Ltd. v. American Bureau of Shipping, No. 97 Civ. 8592(LMM), 1998 WL 274469, at *4 (S.D.N.Y. May 26, 1998)(New York arbitration forum clause evidences agreement that New York is a convenient forum over New Jersey "not only for arbitration, but also for enforcement of the arbitration agreement").

The reduction of this lawsuit from a 16-count contract, tort and statutory case to a six-count contract case, and the commensurate shift in the location of the bulk of the probable relevant evidence from Japan to a more balanced distribution in Japan and the United States significantly eases the administrative burdens of trying this case in this Court. As to the enforceability of a judgment in this case against defendants located in Japan, defendants have adduced no evidence that a judgment against Japanese defendants arising out of the License Agreement and accompanying guarantee, would *not* be enforceable in Japan. In sum, defendants have failed to adduce "positive evidence of unusually extreme circumstances" such that "material injustice is manifest" that would warrant dismissal of this case for *forum non conveniens*. See SME Racks, Inc., 382 F.3d at 1101, 1102, 1103.

The decision to dismiss Renfroe I based on *forum non conveniens* was a close one. The materially different underlying facts presented here - a case now limited to breach of contract claims - tips the balance of factors in Renfroe II toward denying defendants' motion to dismiss for *forum non conveniens*. As discussed at the

19

hearing, the Court is nonetheless concerned about giving plaintiff two bites at the apple, where plaintiff, after failing in its first attempt to keep the case here, has now scaled back, bringing a more limited lawsuit that could have been brought the first time.  This is a unique scenario in which the plaintiff comes back to the *same* court after a *forum non conveniens* dismissal, and where the change in material underlying facts was caused by plaintiff's litigation strategy, not by any external subsequent changes or developments.   "Collateral estoppel is generally said to have three purposes: to 'relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication.'"   United States v. Stauffer Chemical Co., 464 U.S. 165, 176-77 (1984)(quoting Allen v. McCurry, 449 U.S. 90, 94 (1980).  It could be reasonably argued that allowing plaintiff to proceed in this forum with its second lawsuit honors these principles in the breach.

But the law of *forum non conveniens* allows for reconsideration if the plaintiff is able to show "some 'objective facts that materially alter the considerations underlying the previous resolution.'"  Villar, 990 F.2d at 1498 (quoting Exxon Corp., 817 F.2d at 314).  Here, the materially altering "objective fact" is that plaintiff's claims are now limited to whether the License Agreement was breached.  As noted at the hearing, this breach of contract lawsuit is precisely that contemplated by the License Agreement's forum selection and choice of law provisions; defendants cannot be

20

surprised by being haled into court in Florida to defend a suit based on the Agreement.  To dismiss this contract action for *forum non conveniens* because some of the witnesses and evidence relevant to the claims are located in Japan would essentially render the Agreement's forum selection and choice of law provisions a nullity.  Further, as to the cost, vexation, and fairness of multiple lawsuits, defendants' success in gaining dismissal of <u>Renfroe I</u> did result in the defendants not being required to defend extensive tort claims against them in this Court.  At the hearing, plaintiff acknowledged that by eliminating the tort and statutory claims as the "cost" of being able to litigate in this Court, plaintiff's theories of recovery and potential damages had shrunk considerably.  Accordingly, for all of the foregoing reasons,[11] defendants' motions to dismiss for *forum non conveniens* are due to be denied.

### C. Failure To State A Claim And Personal Jurisdiction Pertaining To Defendants Japan Clamp, Sori Industries, and Sori

Defendants Japan Clamp, Sori Industries, and Sori, the individual, seek to have plaintiff's complaint dismissed for additional reasons: lack of personal jurisdiction and failure to state a claim.  At the hearing on defendants' motions, the effect and construction of the guarantee, and the deficiency of the plaintiff's allegations with respect to personal jurisdiction over these three defendants were both discussed.  As

---

[11] Because of the Court's determination that both the private and public considerations do not support dismissal of this action for *forum non conveniens*, it does not consider whether plaintiffs have an ability to reinstate this action in Japan.

stated at the hearing, the Court will allow plaintiff to re-plead its complaint.  However, the Court's decision to allow an amended complaint should not be construed to permit plaintiff to re-expand the scope of the claims or to add additional claims or parties. Rather, any amendment to the complaint should be limited to those issues discussed at the hearing pertaining to the guarantee and the issue of personal jurisdiction.

For the foregoing reasons, it is hereby

**ORDERED**:

1.      Defendant Renfroe Japan Co. Ltd's Motion to Dismiss (Doc. 19) is **DENIED**.

2.      Defendants Japan Clamp Company, Ltd., Sori Industries, Inc., and Hiroyuki Sori's Motion To Dismiss (Doc. 20) is **GRANTED IN PART AND DENIED IN PART** as follows:

a.      The motion is **DENIED** as it pertains to issue preclusion and *forum non conveniens.*

b.      The motion is **GRANTED** and the Complaint is **DISMISSED WITHOUT PREJUDICE, WITH LEAVE TO AMEND**.

3.      Plaintiff J.C. Renfroe & Sons, Inc. may file an amended complaint no later than **January 28, 2009**.  Defendants should file their responses to the amended complaint no later than **February 18, 2009**.

4.      The Court will enter a Case Management and Scheduling Order.

**DONE AND ORDERED** at Jacksonville, Florida, this 7th day of January, 2009.

TIMOTHY J. CORRIGAN
United States District Judge

jl.
Copies to:
Counsel of Record